UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUNGE AGRIBUSINESS SIGNAPORE PTE. LTD., <br>     Plaintiff, <br><br> v. <br><br> DALLAN HUALIANG ENTERPRISE GROUP CO., LTD., <br>     Defendant. | No. 04 CV 6376 <br> Judge James B. Zagel |
| JIANFEI XU, <br>     Crossclaim Plaintiff, <br><br> v. <br><br> BUNGE AGRIBUSINESS SIGNAPORE PTE., LTD., <br>     Crossclaim Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is "Crossclaim Defendant" Bunge Agribusiness Singapore Pte. Ltd.'s ("Bunge") motion to dismiss the "Cross-Complaint" of Jianfei Xu ("Xu"). For the following reasons, the motion is GRANTED.

I.    BACKGROUND

On October 1, 2004, Bunge filed the original complaint in this case against Defendant Dalian Hualing Enterprise Group Co., Ltd ("Dalian"). The complaint arose from an arbitration proceeding that was pending at the time between Bunge and Dalian in London, England. The arbitration proceeding concerned an alleged breach of two large commodity contracts between Bunge and Dalian, and Bunge sought damages of $12.5 million. In connection with the London

arbitration, the High Court of Justice, Queens Bench Division, Commercial Court, issued a "Freezing Injunction" that precluded Dalian from dissipating its assets worldwide.

Thereafter, Bunge filed suit to have the Freezing Injunction recognized and enforced by various United States federal district courts in the jurisdictions where Bunge had reason to believe Dalian held assets. After filing suit in this Court, Bunge sought an Order to Show Cause for the enforcement of the Freezing Injunction, which I granted and extended several times. During this time, Bunge discovered several accounts held by Refco, LLC that Bunge believed were held by or for Dalian, including an account in the name of Dalian employee Jeffrey Xu (a/k/a Jian Fei Xu), the crossclaimant.

Refco froze Xu's account pursuant to my order to enforce the Freezing Injunction. Subsequently, Xu contacted Refco and asserted that his account had no connection to Dalian. Refco then sought to intervene in this case in order to unfreeze Xu's account, or alternatively to require Bunge to post a bond. On May 12, 2005, I granted Refco's motion to intervene. Refco then filed a Motion for Clarification that resulted in extensive briefing over whether Dalian had a beneficial interest in the Xu account. In support of its motion, Refco submitted correspondence exchanged with Xu concerning the litigation and the freezing of his account. Refco explained to Xu that it was bound by my order freezing his account, and that he should provide Refco with any evidence that he may have that Dalian held no interest in his account so that Refco could present it to me. Xu responded to Refco's letters but failed to offer any evidence to support his claim that Dalian held no beneficial interest in his account.

On August 22, 2005, I entered an order denying Refco's Motion for Clarification, which stated in relevant part:

> Despite Xu's unsworn assertions, I decline to find that the accounts "frozen" by Refco are unrelated to Dalian. For this reason, I decline to release

> Refco from my previous orders. At this time, I direct Refco, under pain of contempt, to continue to "freeze" all accounts associated with Xu until such time that I deem it no longer necessary.
>
> At the same time, I order Bunge to post a two-times bond in the amount of $101,321.24. Xu may, of course, intervene in this case or in the underlying United Kingdom case to seek relief.

Xu did not intervene in this case or the underlying United Kingdom case. On January 25, 2007, following rulings in the London arbitration proceeding in favor of Bunge and against Dalian, Bunge filed a motion seeking to confirm the arbitration award, and for an order compelling turnover of the Refco accounts at issue, including the Xu account. On March 23, 2007, I granted the motion and entered an Order for Judgment and Turnover of Funds, which resulted in the XU account being turned over by Refco to Bunge. Thereafter this case was terminated. No appeals were taken. Neither Dalian nor Xu ever appeared or intervened in the case prior to the entry of judgment.

On December 11, 2012, Xu filed the instant *pro se* "Cross-Complaint" against Bunge. The "Cross-Complaint" was not filed as a new matter, but was brought as a pleading in the case between Bunge and Dalian – Case No. 04-CV-6376 – which has been closed since March 23, 2007. Xu's "Cross-Complaint" purports to bring five state law causes of action against Bunge: Fraud and Misrepresentation (Count I), Unjust Enrichment (Count II), Restitution (Count III), Mistake and Omission (Count IV), and Emotional Distress (Count V). Essentially, Xu seeks the return of the $9,152.62 turned over to Bunge as a result of my March 23, 2007 order, plus interest fees and costs, as well as damages.

II.  ANALYSIS

There are several difficulties with Xu's "Cross-Complaint." First, my March 23, 2007 order was a final judgment. "Once a district court enters a final judgment . . . it lacks jurisdiction

to continue hearing related issues, except to the extent authorized by statute or rule." *U.S. v. Campbell*, 324 F.3d 497, 500 (7th Cir. 2003). Xu argues that Fed. R. Civ. P. 13, 17, and 19 provide the necessary authorization for me to consider his "Cross-Complaint." We need not get bogged down in the specifics of these rules. Even if the litigation between Bunge and Dalian was somehow procedurally defective under one of the rules—which I effectively determined was not the case in denying Refco's Motion for Clarification—I am aware of no authority that holds that a Rule 13, 17, or 19 defect, exposed some 5 years after a final judgment, allows a district court to reestablish jurisdiction over a terminated case.

Xu fares no better under Rules 24 and 60(b). My order denying Refco's Motion for Clarification explicitly stated that Xu could intervene in this matter. However, interventions of right must be made "[o]n timely motion" to intervene. Fed. R. Civ. P. 24(a). Xu had 19 months to intervene prior to my entry of final judgment, but he chose not to. Even if I were liberally to construe his "Cross-Complaint" as a motion to intervene, which is the only way he could properly enter this litigation, it comes far too late. Similarly, if I were liberally to construe the "Cross-Complaint" as a Rule 60(b) motion for relief from judgment on the grounds that it was void, it fails because Xu was not a party to the litigation between Bunge and Dalian, and I find that five years is not a "reasonable" time period under Fed. R. Civ. P. 60(c)(1).

Even if Xu could overcome the jurisdictional hurdle, all of his claims are barred by the applicable statutes of limitations. Illinois courts apply the "discovery rule" to determine when a limitations period begins to run. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72, 77 (Ill. 1995). The discovery rule "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Id*. Surely, Xu "discovered" any injury to himself within six

4

months of my March 22, 2007 order (Refco was keeping Xu informed of the proceedings in this Court throughout—in February 2005 he received and responded to a letter from Refco notifying him that his account was frozen and that Bunge was seeking to seize it. To the extent that Xu claims he was unaware of later proceedings and my final judgment, I find that he did not exercise reasonable diligence). Counts I, II, and III are all subject to a five-year limitations period. *Clark v. Robert W. Baird Co., Inc.*, 142 F. Supp. 2d 1065, 1074–75 (N.D. Ill. 2001) (five-year limit for fraud); *Frederickson v. Blumenthal*, 271 Ill. App. 3d 738, 742 (1995) (five-year limit for unjust enrichment); *Burns Philp Food, Inc. v. Cavalea Continental Freight, Inc.*, 135 F.3d 526, 528 (7th Cir. 1998) (five-year limit for restitution). Count IV is not a recognizable cause of action, and Count V is subject to a two-year limitations period. *Turner v. McQuarter*, 79 F.Supp.2d 911, 918 (N.D. Ill. 1999). By December 11, 2012 it was too late for Xu to assert any of the causes of action he attempts to bring under his "Cross-Complaint."

    Dismissed with prejudice.

                                              ENTER:

                                              James B. Zagel
                                              United States District Judge

DATE: June 27, 2013